**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>PRIME CORE TECHNOLOGIES INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-11161 (JKS)<br><br>(Jointly Administered) |
| PCT LITIGATION TRUST,<br><br>Plaintiff,<br><br>v.<br><br>WYRE PAYMENTS, INC., ROCKWALLET, LLC, and DOES 1-100,<br><br>Defendants. | Adv. Pro. No. 25-51978 (JKS)<br><br>**Related Adv. D.I. Nos. 1, 16, 17, 22, 31, 35, 50, 51, 52, 53, 54, and 55**[2] |

**OPINION**

Before the Court is Defendant RockWallet, LLC's ("RockWallet") motion to dismiss[3] the Complaint filed by PCT Litigation Trust ("PCT"), pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim (the "Motion to Dismiss"). For the reasons set forth below, the Court will grant the Motion to Dismiss.[4]

---

[1] The debtors in these Chapter 11 Cases, along with the last four digits of each debtor's federal tax identification number are: Prime Core Technologies Inc. (5317); Prime Trust, LLC (6823); Prime IRA LLC (8436); and Prime Digital, LLC (4528).

[2] Citations to D.I. __ reference the docket entries in the lead bankruptcy case and citations to Adv. D.I. __ reference the docket entries in this adversary proceeding.

[3] Adv. D.I. 16 (RockWallet, LLC's Motion to Dismiss the Complaint) and 17 (RockWallet, LLC's Memorandum of Law in Support of its Motion to Dismiss the Complaint).

[4] PCT filed an opposition to the Motion to Dismiss (Adv. D.I. 22). RockWallet filed a reply brief in support of the Motion to Dismiss (Adv. D.I. 31) and a Notice of Supplemental Authority in Support of the Motion to Dismiss (Adv. D.I. 50), to which PCT responded (Adv. D.I. 51). PCT filed a Request for Oral Argument (Adv. D.I. 35) and RockWallet filed a Notice of Completion of Briefing (Adv. D.I. 36). The Court did not hear oral argument because

## JURISDICTION

This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(2) and 1334(b) and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This proceeding is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

## BACKGROUND

### A. Procedural Background

On August 14, 2023, Prime Core Technologies Inc. and its affiliated debtors ("Prime" or "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

PCT was created pursuant to the Amended Joint Chapter 11 Plan of Reorganization for Prime Core Technologies Inc. and its Affiliated Debtors[5] to among other things, commence, litigate and settle Vested Causes of Action (as defined in the Plan).[6]

On August 13, 2025, PCT commenced this adversary proceeding by filing the Complaint against Defendants,[7] pursuant to 11 U.S.C. §§ 547 and 550, seeking to avoid and recover all preferential transfers of property made by the Debtors to or for the benefit of the Defendants (the "Transfer"), plus interest, attorneys' fees, and costs.

---

the facts and legal arguments are adequately presented in the briefs, and the decisional process would not be significantly aided by oral argument.

[5] D.I. 592 (the "Plan"); D.I. 644 (Findings of Fact, Conclusions of Law, and Order (I) Approving Disclosure Statement on a Final Basis and (II) Confirming the Amended Joint Chapter 11 Plan of Reorganization for Prime Core Technologies Inc. and its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code).

[6] D.I. 592 (Plan) at §§ 1.116, 6.21.

[7] The Complaint was filed against Wyre Payments, Inc. ("Wyre"), RockWallet, and Does 1-100 (the "Doe Defendants"). *See* Adv. D.I. 1 (Compl.).

RockWallet seeks dismissal of the Complaint, under Rule 12(b)(6), on the grounds that the Complaint fails to allege facts sufficient to support a claim upon which relief can be granted. More specifically, RockWallet argues that (i) the Complaint fails to plead defendant-specific "reasonable due diligence" as required by section 547(b) of the Bankruptcy Code, (ii) RockWallet is not a "transferee" or a "subsequent transferee" under section 550 of the Bankruptcy Code, (iii) even assuming that RockWallet is an immediate or mediate transferee, RockWallet is a subsequent good faith transferee who purchased Defendant Wyre's customer database for value and without knowledge of the voidability of the Transfer; and (iv) Counts III-V are not applicable to RockWallet.

**B. Factual Background**[8]

Prime was a crypto company. Thousands of other crypto companies used Prime primarily to gain access to the U.S. banking system by converting crypto to fiat. The Nevada Financial Institutions Division shut down Prime in June 2023 and, in August 2023, Prime filed for bankruptcy.[9]

Defendant Wyre was a company that offered blockchain technology-based payment services.[10]

---

[8] The Court adopts the facts from the Complaint, accepting all of the Complaint's well-pleaded facts as true and disregarding any legal conclusions. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Since the Court writes only for the parties, the Court presumes they have familiarity with the facts. Accordingly, the Court includes only a summary of the background relevant to deciding the Motion to Dismiss.

[9] Adv. D.I. 1 (Compl.) at ¶ 1.

[10] Adv. D.I. 1 (Compl.) at ¶ 3.

The Doe Defendants were certain of Prime's End-Users who accessed Prime's services through their relationship with an Integrator, Wyre.[11] The Doe Defendants entered into End-User Agreements with Prime, which were presented through Wyre, which established that the relationship between Prime and the Doe Defendants was a debtor-creditor relationship, not a fiduciary relationship.[12] The Doe Defendants transferred fiat currency to Prime pursuant to the End-User Agreements.[13]

In January 2023, Wyre began to wind down operations.[14]

On May 31, 2023, during the 90-days prior to the Petition Date (the "Preference Period"), Prime transferred $9,830,818.40 USD to Wyre for the benefit of the Doe Defendants.[15] During the Preference Period, Wyre transferred no potential subsequent new value to Prime.[16]

In February 2024, after Wyre shut down, RockWallet acquired Wyre's customer base and customer accounts.[17]

On July 18, 2025, the Court entered the Distribution Opinion and Distribution Order,[18] wherein the Court analyzed whether fiat and crypto held by the Debtors was property of the

---

[11] Adv. D.I. 1 (Compl.) at ¶¶ 5-6 and 24. The terms End-User and Integrator are defined in the Complaint.

[12] Adv. D.I. 1 (Compl.) at ¶¶ 7, 52, and 55-59.

[13] Adv. D.I. 1 (Compl.) at ¶ 53.

[14] Adv. D.I. 1 (Compl.) at ¶¶ 3 and 22.

[15] Adv. D.I. 1 (Compl.) at ¶ 60.

[16] Adv. D.I. 1 (Compl.) at ¶ 62 and Ex. A (Decl. of James P. Brennan) (the "Brennan Decl.") at ¶ 66.

[17] Adv. D.I. 1 (Compl.) at ¶¶ 3, 23, and 171.

[18] Adv. D.I. 1 (Compl.) at ¶ 54. See *In re Prime Core Techs. Inc.*, 673 B.R. 148, 156 (Bankr. D. Del. 2025) (the "Distribution Opinion"). Also found at D.I. 1986 (Order Granting Plan Administrator's Motion for Entry of an Order: (i) Approving the Plan Administrator's Determination that the Debtors' Assets are Property of the Bankruptcy Estates; (ii) Approving Distributions of Estate property; (iii) Establishing Procedures for Settling Disputed Claims Reserve; and (iv) Granting Relief, the "Distribution Order"); and 1985 (the Distribution Opinion).

Debtors' estates. In the Distribution Opinion, the Court found that "the End-User Agreement … doe[es] not establish a trust relationship exists between the End-Users . . . and []the Debtors."[19]

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012(b), challenges the sufficiency of the factual allegations in a complaint.[20] When a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the complaint "does not need detailed factual allegations, [but] a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[21] Two "working principles" underlie this pleading standard:

> First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. Second, determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense.[22]

Under this pleading standard, a complaint must nudge claims "across the line from conceivable to plausible."[23] The movant carries the burden of showing that dismissal is

---

[19] Adv. D.I. 1 (Compl.) at ¶ 59. *In re Prime Core Techs. Inc.*, 673 B.R. 148, 171 (Bankr. D. Del. 2025).

[20] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

[21] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (cleaned up).

[22] *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citation omitted).

[23] *Twombly*, 550 U.S. at 547.

appropriate.[24] The relevant record for consideration includes the complaint and any document "integral to or explicitly relied upon in the complaint."[25]

In analyzing a motion to dismiss, the Third Circuit instructs courts to follow a three-part analysis. "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"[26] Second, the court must separate the factual and legal elements of the claim, accepting all of the complaint's well-pleaded facts as true and disregarding any legal conclusions.[27] Third, the court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.[28] After conducting this analysis, the court may conclude that a claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.[29]

## LEGAL ANALYSIS

### A. Satisfaction of "Reasonable Due Diligence"

RockWallet asserts that PCT only included conclusory, boilerplate due diligence allegations under section 547(b) of the Bankruptcy Code, which are a required element of a preference claim.

Section 547(b) imposes a due diligence requirement and provides that "[t]he trustee may, based on reasonable due diligence in the circumstances of the case and taking into account a

---

[24] *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.)*, 496 F. Supp. 2d 404, 408 (D. Del. 2007).

[25] *U.S. Express Lines, Ltd. v. Higgins,* 281 F.3d 383, 388 (3d Cir. 2002) (citing *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997)).

[26] *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 675).

[27] *Id. See also Fowler*, 578 F.3d at 210–11 (citing *Iqbal*, 556 U.S. at 679).

[28] *Santiago*, 629 F.3d at 130.

[29] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

party's known or reasonably knowable affirmative defenses under subsection (c), avoid any transfer of an interest of the debtor in property . . .."[30] "To satisfy § 547(b), the plaintiff only needs to allege that it conducted reasonable due diligence into the defendant's known or reasonably knowable affirmative defenses."[31] The plaintiff need only advance a "general allegation that all conditions precedent have occurred."[32]

In the Complaint, PCT avers the following:

- "During the Preference Period, Wyre transferred no potential subsequent new value to Prime."[33]
- "Based upon the due diligence evaluation of the reasonably knowable affirmative defenses to avoidance of the Transfer during the Preference Period by PCT and the third-party expert retained in this matter, PCT has determined that it may avoid the Transfer even after taking into account potential affirmative defenses."[34]
- "Pursuant to 11 U.S.C. § 547(b), PCT has conducted reasonable due diligence into the circumstances of the case and has taken into account the known or reasonably knowable affirmative defenses that Defendants could assert, including Defendants' potential defenses under section 547(c) of the Bankruptcy Code, and believes the Transfer is avoidable."[35]
- "To analyze the fiat transactions between Prime and the Defendants, [Brennan] reviewed Prime's Internal Ledger, API log audit data, bank statements, and bank reconciliations."[36]

---

[30] 11 U.S.C. § 547(b). *See also Miller v. Prestige Patio Co. Ltd. (In re Christmas Tree Shops, LLC)*, No. 23-10575 (TMH), 2025 WL 3510820, at *2 (Bankr. D. Del. Dec. 5, 2025).

[31] *In re Christmas Tree Shops, LLC*, No. 23-10575 (TMH), 2025 WL 3510820 at *2 (citations and footnotes omitted; cleaned up).

[32] *Off. Committee of Unsecured Creditors v. Nimble Gravity, LLC (In re Pack Liquidating, LLC)*, No. 22-10797, 2024 WL 4633499, at *3 (Bankr. D. Del. Oct. 30, 2024) (citing *Pinktoe Liquidation Tr. v. Dellal (In re Pinktoe Tarantula Ltd.)*, No. 18-10344 (LSS), 2023 WL 2960894, at *5 (Bankr. D. Del. Apr. 14, 2023)). *But see In re Christmas Tree Shops, LLC*, No. 23-10575 (TMH), 2025 WL 3510820 at *2 (Judge Horan has held that such statement must be more than a general statement that some transfers may be subject to defenses in whole or part and the defendant bears the burden of proof to establish such defenses.).

[33] Adv. D.I. 1 (Compl.) at ¶ 62 and Ex. A (Brennan Decl.) at ¶ 66.

[34] Adv. D.I. 1 (Compl.) at ¶ 76.

[35] Adv. D.I. 1 (Compl.) at ¶ 166.

[36] Adv. D.I. 1, Ex. A (Brennan Decl.) at ¶ 64.

- "[Brennan] identified that the Wyre Defendants transferred no potential subsequent new value to Prime during the Preference Period. My analysis evaluated the transaction date and time provided in the bank data for each incoming and outgoing transfer during the Preference Period."[37]

The plaintiff "is required to plead that he performed due diligence and has taken into account known or reasonably knowable affirmative defenses."[38] Here, PCT adequately plead that the Trust performed due diligence by reviewing Prime's Internal Ledger, API log audit data, bank statements, and bank reconciliations.[39] Additionally, PCT knew of no affirmative defenses and its expert concluded that the Wyre Defendants transferred no subsequent new value to Prime during the Preference Period.[40] As a result, PCT satisfied its reasonable due diligence pleading obligation.

**B. Count I: Avoidance of Preferential Transfer**

Count I seeks avoidance of a preferential transfer. RockWallet argues that Count I fails because it does not allege or identify any transfer made to or for the benefit of RockWallet. RockWallet maintains that it never had dominion and control over the funds transferred by Prime nor does the Complaint allege such. RockWallet continues that it was "lumped" together with Wyre and not adequately apprised of the conduct it was alleged to have engaged in.

"To establish a plausible preference claim, the plaintiff must (i) identify the nature and amount of each antecedent debt; (ii) identify each alleged preference; and (iii) allege that it conducted reasonable due diligence into the defendant's known or reasonably knowable

---

[37] Adv. D.I. 1, Ex. A (Brennan Decl.) at ¶ 66.

[38] *In re Christmas Tree Shops, LLC*, No. 23-10575 (TMH), 2025 WL 3510820 at *2. *But see In re Pinktoe Tarantula Ltd.*, No. 18-10344 (LSS), 2023 WL 2960894 at *5 (holding that a general allegation that all conditions precedent, including due diligence, satisfies this pleading requirement).

[39] Adv. D.I. 1, Ex. A (Brennan Decl.) at ¶ 64.

[40] Adv. D.I. 1, Ex. A (Brennan Decl.) at ¶ 66.

affirmative defenses. Satisfaction of these elements is generally sufficient to establish a plausible claim that gives enough factual detail to put the defendants on notice of the claims against them."[41]

The Complaint refers to Wyre and RockWallet, collectively, as the "Wyre Defendants."[42] The Complaint alleges that "Prime made the Transfer to Wyre on account of antecedent debts Prime owed to the Doe Defendants."[43] The Complaint continues that Wyre ceased operations in 2023[44] and in 2024, RockWallet acquired Wyre's full customer accounts after Wyre shut down.[45] The Complaint further alleges:

- "On May 31, 2023, during the Preference Period, Prime transferred $9,830,818.40 USD to Wyre for the benefit of the Doe Defendants."[46]
- "Prime made the Transfer to Wyre for the benefit of the Doe Defendants, creditors of Prime, by virtue of Prime's debtor-creditor relationship with the Doe Defendants."[47]
- "Wyre was the initial transferee of the Transfer because Wyre received the Transfer from Prime."[48]
- "Prime made the Transfer to Wyre for the benefit of the Doe Defendants."[49]

---

[41] *In re Pack Liquidating, LLC*, No. 22-10797, 2024 WL 4633499 at *2 (cleaned up; footnotes and citations omitted).

[42] Adv. D.I. 1 (Compl.) at ¶ 1.

[43] Adv. D.I. 1 (Compl.) at ¶ 4. *See also* Adv. D.I. (Compl.) at ¶ 159 ("Prime made the Transfer to Wyre for the benefit of the Doe Defendants.").

[44] Adv. D.I. 1 (Compl.) at ¶ 22.

[45] Adv. D.I. 1 (Compl.) at ¶ 23.

[46] Adv. D.I. 1 (Compl.) at ¶ 60.

[47] Adv. D.I. 1 (Compl.) at ¶ 71.

[48] Adv. D.I. 1 (Compl.) at ¶ 79.

[49] Adv. D.I. 1 (Compl.) at ¶ 80.

Count I *only* refers to the Transfer from Prime to Wyre, not RockWallet.[50] In order to satisfy *Twombly* and *Iqbal*, the plaintiff must provide "specific facts as to which . . . Defendant received which transfer,"[51] which PCT did not do with respect to RockWallet. Count I is silent as to any transfer to RockWallet. As a result, Count I must be dismissed against RockWallet.

**C. Count II: Recovery of Avoided Transfer**

Count II of the Complaint seeks recovery of the avoided transfer from the "Wyre Defendants." The Complaint alleges that Prime transferred $9,830,818.40 USD to Wyre, Wyre ceased operations, and thereafter, RockWallet acquired Wyre's customer base and accounts.[52]

RockWallet argues that PCT fails to allege that RockWallet was the "initial transferee" of the Transfer or an "entity for whose benefit the Transfer was made" or the "immediate or mediate transferee" of the Transfer as required by section 550(a) of the Bankruptcy Code. RockWallet contends that in October 23, 2023, Wyre entered into an Assignment for the Benefit of Creditors whereby Wyre transferred to YER ABC, LLC, as Assignee for the Benefit of Creditors of Wyre ("Assignee") ownership of its right, title, and interest to all of its tangible and intangible assets, including customer accounts and information, website, and branding.[53] RockWallet argues that in December 2023, Assignee and RockWallet entered into the Wyre-RockWallet APA (attached to the Motion to Dismiss as Exhibit 2),[54] pursuant to which

---

[50] Adv. D.I. 1 (Compl.) at ¶¶ 158-167.

[51] *In re PennySaver USA Publ'g, LLC*, 602 B.R. at 268 (*citing In re Conex Holdings, LLC*, 514 B.R. at 414).

[52] Adv. D.I. 1 (Compl.) at ¶¶ 3, 23, and 171.

[53] Adv. D.I. 17 at Ex. 2 (Asset Purchase Agreement between RockWallet and YER ABC, LLC, as Assignee for Benefit of Creditors and Wyre, Inc. and Wyre Payments, Inc. dated Dec. 27, 2023 (the "Wyre-RockWallet APA").

[54] *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (Holding that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to

RockWallet purchased Wyre's customer database to solicit and transition Wyre's former customers to RockWallet's platform,[55] but that such acquisition is not a transfer of the avoided funds and the Complaint alleges no tracing to RockWallet.[56]

PCT responds that RockWallet became successor in liability to Wyre by (i) continuing the accounts of the Wyre customers which migrated to RockWallet, or (ii) implicitly assuming liabilities flowing from the transferred Wyre accounts. PCT claims that whether RockWallet is a successor in liability to Wyre is a fact-intensive inquiry and not appropriate for resolution on a Motion to Dismiss. It further contends that PCT's reliance on the Wyre-RockWallet APA is misplaced and premature because the scope of the assets transferred is based on extrinsic evidence.

**1. Transferee**

**a. Initial Transferee Under Section 550(a)(1)**

To the extent that a transfer is avoided under section 547 of the Bankruptcy Code, section 550(a) permits a trustee to "recover, for the benefit of the estate, the property transferred, or . . . the value of such property" from either the "*initial transferee* of such transfer or the entity for whose benefit such transfer was made"[57] The term "initial transferee" is not defined by the Bankruptcy Code, but it is widely accepted that a transferee is one who must (1) actually receive the funds, and (2) have full dominion and control over funds for his or her own account, as

dismiss if the plaintiff's claims are based on the document."). Here, PCT alleges successor liability which stems from the Wyre-RockWallet APA and PCT has not challenged the authenticity of the Wyre-RockWallet APA.

[55] Adv. D.I. 17 at Ex. 2 (Wyre-RockWallet APA).

[56] Adv. D.I. 17 at Ex. 2 (Wyre-RockWallet APA).

[57] 11 U.S.C. § 550(a) (emphasis added).

opposed to receiving them in trust or as agent for someone else.[58] Application of the "dominion and control" test "requires courts to step back and evaluate a transaction in its entirety to make sure that their conclusions are logical and equitable."[59]

In defining the terms "dominion and control," courts have held that "a transferee must have the legal right to use the funds to whatever purpose he or she wishes, be it to invest in lottery tickets or uranium stocks."[60] Here, there are no allegations that RockWallet (if it received the Transfer) would have had the legal right to use the fiat for the purposes RockWallet wished. The Complaint does not allege that RockWallet had dominion and control over the alleged Transfer.

Additionally, to determine a party's status as a beneficiary of a transfer for purposes of recovery under section 550(a)(1), courts assess three aspects of the "benefit": (1) it must actually have been received by the beneficiary; (2) it must be quantifiable; and (3) it must be accessible to the beneficiary."[61]

---

[58] *In Re Glob. Prot. USA, Inc.*, 546 B.R. 586 (Bankr. D.N.J. 2016); *Southmark Corp. v. Schulte, Roth & Zabel, L.L.P.*, 242 B.R. 330, 338 (N.D. Tex. 1999), aff'd in part sub nom. *In re Southmark Corp.*, 239 F.3d 365 (5th Cir. 2000), as amended on reh'g (Dec. 11, 2000) (citations omitted). *See also Bonded Fin. Servs., Inc. v. Eur. Am. Bank,* 838 F.2d 890, 893 (7th Cir. 1988) (Finding that "[a]lthough the Bankruptcy Code does not define 'transferee', and there is no legislative history on the point, we think the minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes."); *Burtch v. Stylish Move Sportswear, Inc. (In re Factory 2-U Stores, Inc.)*, No. 04-1011 PJW, 2007 WL 2698207, at *3 (Bankr. D. Del. Sept. 11, 2007) (cleaned up); *Goldberg v. Campbell (In re Woodbridge Grp. of Companies, LLC)*, No. 17-12560 (JKS), 2026 WL 1257539, at *17 (Bankr. D. Del. May 6, 2026) (citations omitted; cleaned up) (Individual defendant "must establish that it lacked dominion and control over the transfer because the payment simply passed through its hands and it had no power to redirect the funds to its own use."); *Dembsky v. Frommer, Lawrence & Haug, LLP (In re Lambertson Truex, LLC)*, 458 B.R. 155, 158 (Bankr. D. Del. 2011) (citations omitted); *Mervyn's LLC v. Lubert-Adler Grp. IV, LLC (In re Mervyn's Holdings, LLC)*, 426 B.R. 96, 102 (Bankr. D. Del. 2010) (citations omitted).

[59] *Danning v. Miller (In re Bullion Reserve of N. Am.)*, 922 F.2d 544, 549 (9th Cir. 1991).

[60] *Bond v. Vining Sparks (In re U.S. Mortg. Corp.)*, 492 B.R. 784, 813 (Bankr. D.N.J. 2013) (citations omitted; cleaned up).

[61] *Halperin v. Morena (In re Green Field Energy Servs., Inc.)*, 594 B.R. 239, 287–88 (Bankr. D. Del. 2018) (citations omitted; cleaned up); *Baldi v. Lynch (In re McCook Metals, L.L.C.)*, 319 B.R. 570, 590 (Bankr. N.D. Ill. 2005).

The first element requires that an "actual benefit" must have been received rather than an "intended benefit" in order for the beneficiary to be liable under section 550(a)(1).[62] Here, PCT alleges that on May 31, 2023, Prime transferred $9,830,818.40 to Wyre for the benefit of the Doe Defendants.[63] PCT alleges that Wyre "actually received" the funds transferred by Prime.

The Complaint continues that RockWallet subsequently acquired Wyre's customer base after Wyre shut down.[64] Although PCT alleges that RockWallet acquired Wyre's customer base, PCT does not allege that RockWallet "actually received" the funds transferred by Prime, by acquiring the customer base, or some portion thereof. PCT has not pled facts sufficient to establish that RockWallet actually received the Transfer.

The second element requires that the benefit actually received be quantifiable.[65] Here, PCT alleges a quantifiable amount of fiat was transferred to the "Wyre Defendants." The Complaint, however, does not allege what quantity of fiat, if any, was transferred to RockWallet. As a result, PCT has not pled facts sufficient to establish that RockWallet actually received a quantifiable benefit.

Lastly, the third element is the measure of the value of the transfer. Section 550(a)(1) permits a trustee recover "the value" of the transferred property. The award of "'value' against a transfer beneficiary should not be based on value that the beneficiary did not receive."[66] Here, of

---

[62] *In re McCook Metals, L.L.C.*, 319 B.R. at 591.

[63] Adv. D.I. 1 (Compl.) at ¶ 60.

[64] Adv. D.I. 1 (Compl.) at ¶ 171.

[65] *In re McCook Metals, L.L.C.*, 319 B.R. at 591.

[66] *In re McCook Metals, L.L.C.*, 319 B.R. at 593 ("It is easy to imagine a situation in which the benefit resulting from a transfer of property is of substantially less value than property itself.").

the approximate $9.8 million PCT seeks to recover from the "Wyre Defendants," PCT does not assert the "value" of the actual benefit that RockWallet received, if any. The Complaint does not plead facts sufficient to inform RockWallet of the amount PCT seeks to recover from it.

In sum, PCT has not alleged sufficient facts to show that it has a plausible claim for recovery of avoided transfer against RockWallet as an initial transferee under section 550(a)(1).

**b. Immediate or Mediate Transferee Under Section 550(a)(2)**

Section 550(a)(2) of the Bankruptcy Code provides that a transfer may be avoided from "any immediate or mediate transferee of such initial transferee."[67] An "immediate or mediate transferee" is also referred to as a "subsequent transferee."[68] The ability to recover in such situations is subject to the following limitation:

> The trustee may not recover under section [550](a)(2) of this section from—
>
> (1) a transferee that takes for value, ... in good faith, and without knowledge of the voidability of the transfer avoided; or
>
> (2) any immediate or mediate good faith transferee of such transferee.[69]

"In order to establish an entity as a subsequent transferee, courts have required that the complaint contain the necessary vital statistics—the who, when, and how much of the purported transfers to establish an entity as a subsequent transferee of the funds."[70]

The Complaint lumps Wyre and RockWallet together and does not provide any information about who, when, and how much of the purported Transfer was transferred to

---

[67] 11 U.S.C. § 550(a)(2).

[68] *Phillips v. SS Assoc., LLC (In re ONH AFC CS Invs., LLC)*, 679 B.R. 169, 178 (Bankr. D. Del. 2026).

[69] 11 US.C. § 550(b); *see also In re Res., Recycling & Remediation, Inc.*, 314 B.R. 62, 70 (Bankr. W.D. Pa. 2004) (citing 11 U.S.C. § 550(b)).

[70] *Gowan v. Amaranth LLC (In re Dreier LLP)*, 452 B.R. 451, 464 (Bankr. S.D.N.Y. 2011) (citation omitted).

RockWallet in order to establish RockWallet as a subsequent transferee of the funds. As a result, the Complaint has not plausibly plead that RockWallet was an "immediate or mediate transferee of such initial transfer" pursuant to section 550(a)(2).

**c. Successor Liability**

In its response to the Motion to Dismiss, PCT raises for the first time a successor liability theory. "Under Rule 8 of the Federal Rules of Civil Procedure, a complaint must provide a defendant with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"[71] The Court may not consider a newly asserted claim alleged in a response to a motion to dismiss, rather than a complaint, because it does not give fair notice of what the plaintiff's claim is and the grounds upon which it rests.[72] "Although a complaint's allegations are to be construed favorably to the pleader," the Third Circuit instructs "we will not read causes of action into a complaint when they are not present." Accordingly, the Court may not consider the newly asserted successor liability claims alleged in PCT's response to the Motion to Dismiss.

Even if the Court considers the claim, successor liability is not applicable. "[A]bsent a contractual obligation to do so, a successor corporation does not assume the liabilities of its predecessor. . . ."[73]

---

[71] *Williams v. New Castle County,* 970 F.2d 1260, 1265–66 (3d Cir.1992).

[72] *Krouse v. Am. Sterilizer Co*., 126 F.3d 494, 499 and n. 1 (3d Cir. 1997); *see also Jefferies v. Ameriquest Mortg. Co.*, 543 F. Supp. 2d 368, 385 (E.D. Pa. 2008) ("[A plaintiff] cannot raise a new claim in her brief that she has not already pleaded."); *Fudge v. Marsh*, No. 20-cv-2112, 2022 WL 509329, at *4 (M.D. Pa. Feb. 18, 2022) (declining to consider plaintiff's new allegations that were only asserted in his brief in opposition to the defendant's motion to dismiss); *Spence v. Balchon*, No. 16-cv-357, 2019 WL 2358454, at *7 (W.D. Pa. April 11, 2019) ("The Court cannot address Plaintiff's new claims and allegations ... in his Response [to the motion to dismiss] without an Amended Complaint."). *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc*., 836 F.2d 173, 181 (3d Cir. 1988) (citing *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984), *cert. denied,* 470 U.S. 1054 (1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

[73] *Rego v. ARC Water Treatment Co. of Pennsylvania*, 181 F.3d 396, 401–02 (3d Cir. 1999).

> In Delaware, when one company sells or otherwise transfers all of its assets to another company, the buyer generally is not responsible for the seller's liabilities, including claims arising out of the seller's tortious conduct. In limited situations, where avoidance of liability would be unjust, exceptions may apply to enable transfer of liability to the seller. Exceptions include: (1) the buyer's assumption of liability; (2) defacto merger or consolidation; (3) mere continuation of the predecessor under a different name; or (4) fraud.[74]

"[E]ach successor liability case must be determined on its own facts." Absent a contractual obligation, a buyer does not assume successor liability.[75]

Although successor liability is a factually intensive inquiry,[76] the Court can look to the contract between Wyre and RockWallet to determine if RockWallet was a "mere continuation" of Wyre. The Wyre-RockWallet APA does not contain a successor liability clause. Further, the Wyre-RockWallet APA states:

> 1.4 Adjustments for Liabilities. In the case that any liabilities of the Seller or the Business attached to the Buyer as a result of the transfer of the Purchased Assets, the Buyer shall be entitled to deduct the cost of such liabilities from the future payments contemplated in Section 1.3 provided that the Deposit shall not be refundable.

The Wyre-RockWallet APA expressly sets-off liabilities that attached to RockWallet and does not provide for an assumption of liability.

Thus, the Court turns to whether the Wyre-RockWallet APA is a de factor merger. "The elements necessary to create a de facto merger under Delaware law are the following: (1) one corporation transfers all of its assets to another corporation; (2) payment is made in stock, issued

---

[74] *Ross v. Desa Holdings Corp.*, No. CIV A 05C-05-013 MMJ, 2008 WL 4899226, at *4 (Del. Super. Ct. Sept. 30, 2008) (footnote and citations omitted).

[75] *Rego*, 181 F.3d at 401–02.

[76] *Rego*, 181 F.3d at 403 (citations omitted); *see also Norfolk S. Ry. Co. v. Pittsburgh & W. Virginia R.R. & Power Reit*, No. 2:11-CV-1588-TFM, 2014 WL 2808907, at *17 (W.D. Pa. June 19, 2014).

by the transferee directly to the shareholders of the transferring corporation; and (3) in exchange for their stock in that corporation, the transferee agreeing to assume all the debts and liabilities of the transferor."[77] The sale of assets from Assignee to RockWallet was expressly limited to those "Purchased Assets" identified in Article 1 of the Wyre-RockWallet APA — customer accounts (as more particularly set out in Schedule A to the Wyre-RockWallet APA), website/email, and branding. Any assets not specified in Article I were "Excluded Assets." The purchase price was $20 for each Acquired Customer. Unlike a de facto merger, the Wyre-RockWallet APA did not transfer all of Wyre's assets to RockWallet, the payment was not in stock to shareholders, and RockWallet did not assume all debts and liabilities. Importantly, the Wyre-RockWallet APA does not provide for a merger or consolidation. The facts do not sufficiently plead a de facto merger or consolidation of Wyre and RockWallet.

The Court next examines whether RockWallet was a "mere continuation" of Wyre. The mere continuation exception requires that

> the purchaser of the assets to be a continuation of the same legal entity, not just a continuation of the same business in which the seller of the assets engaged. The primary elements of being the same legal entity have been said to include the common identity of the officers, directors, or stockholders of the predecessor and successor corporations, and the existence of only one corporation at the completion of the transfer.[78]

After Wyre shut down, and pursuant to the Wyre-RockWallet APA, RockWallet, a limited liability company, purchased only a portion of assets from YER ABC, LLC, as Assignee for the

---

[77] *Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, No. 2022-0378-LWW, 2023 WL 5688392, at *15 (Del. Ch. Sept. 5, 2023) (citations and footnotes omitted).

[78] *Monroe v. FTS USA, LLC*, No. CV 25-362-JLH-LDH, 2026 WL 622263, at *5 (D. Del. Mar. 5, 2026) (citations omitted; cleaned up), report and recommendation adopted, No. CV 25-362-JLH-LDH, 2026 WL 792167 (D. Del. Mar. 20, 2026).

Benefit of Creditors of Wyre, Inc. The Complaint does not allege that the purchase of the assets resulted in the continuation of the same legal entity, nor does it allege common identity of the officers, directors, or stockholders of Wyre and RockWallet. Thus, based on the facts as alleged, it is not plausible to conclude that RockWallet is a "mere continuation" of Wyre.

Lastly, there are no allegations of fraud vis-à-vis Wyre and RockWallet to support a finding of successor liability under Delaware law. Consequently, PCT has failed to plead sufficient facts to establish a plausible claim for successor liability.

**D. Counts III (Recovery of Avoided Transfer from the Doe Defendants), IV (Claim Objection - Wyre Defendants), and V (Claim Objection – Doe Defendants)**

RockWallet moves to dismiss Counts III-V of the Complaint because the Counts do not apply to RockWallet or RockWallet does not hold a claim in the Debtors' cases.

Counts III and V are alleged against the Doe Defendants and, therefore, are not applicable to RockWallet.

Count IV seeks to disallow any claim against the Wyre Defendants pursuant to section 502(d). Claims pursuant to section 502(d) are derivative of preference claims.[79] As the underlying claims are being dismissed against RockWallet, likewise, the section 502(d) claim must similarly be dismissed against RockWallet.

---

[79] *PCT Litig. Tr. v. Plutus Fin. Inc. (In re Prime Core Techs. Inc.)*. No. 23-11161, 2026 WL 2455086, *6 (Bankr. D. Del. Aug. 20, 2026) (citation and footnote omitted); *PCT Litig. Tr. v. Oval Labs, Inc. (In re Prime Core Techs. Inc.)*, No. 23-11161 (JKS), 2026 WL 1786460, at *8 (Bankr. D. Del. June 18, 2026) (citation and footnote omitted).

**E. Motion for Protective Order**

On October 13, 2026, MNEE APP, LLC d/b/a RockWallet filed a Motion for Protective Order seeking to stay discovery pending a ruling on the Motion to Dismiss.[80] The Court having ruled on the Motion to Dismiss, the Motion for Protective Order is moot and PCT's request for an order compelling discovery and for expenses is denied.

**CONCLUSION**

For the reasons set forth above, the Motion to Dismiss will be granted. An Order will be issued.

Dated: November 16, 2026

J. Kate Stickles
United States Bankruptcy Judge

[80] MNEE APP, LLC d/b/a RockWallet filed a Notice of Completion of Briefing (Adv. D.I. 55) with respect to its Motion for Protective Order (Adv. D.I. 52), PCT's objection (Adv. D.I. 53), and RockWallet's reply (Adv. D.I. 54).